# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1450

_____

| | | |
|---|---|---|
| Rosemary Dodd, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missorui |
| Marvin Runyon, Secretary, | * | |
| United States Postal Service, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 14, 1999

Filed: June 2, 1999

_____

Before WOLLMAN[1], FLOYD R. GIBSON, Circuit Judges, and TUNHEIM,[2] District
   Judge

_____

TUNHEIM, District Judge.

---

[1]The Honorable Roger L. Wollman succeeded the Honorable Pasco M.
Bowman as Chief Judge of the United States Court of Appeals for the Eighth Circuit
at the end of the day on April 23, 1999.

[2]The Honorable John R. Tunheim, United States District Judge for the District
of Minnesota, sitting by designation.

Rosemary Dodd appeals from the district court's[3] order granting judgment as a matter of law in favor of appellee Marvin Runyon, Postmaster General of the United States Postal Service ("the Postal Service"), on her claims of sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Age Discrimination and Employment Act of 1967 ("the ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010. We affirm.

**I.**

Dodd, a part-time employee of the Wellsville, Missouri Post Office filed this action *pro se* in the Eastern District of Missouri on February 22, 1994. In 1995 she retained counsel to represent her in bringing her claims. The case came to focus on a promotion Dodd alleged she was denied based on her sex and age, in violation of Title VII, the ADEA, and the MHRA. On March 4, 1996, the district court granted summary judgment in favor of the Postal Service. Specifically, the court found that Dodd had failed to establish a prima facie case of discrimination because she had no seniority in the "carrier craft" and therefore was not qualified for the promotion. Dodd appealed.

On May 23, 1997, we reversed the district court's grant of summary judgment and remanded for further proceedings. *See Dodd v. Runyon*, 114 F.3d 726 (8th Cir. 1997) ("*Dodd I*"). We held, after reviewing the record on appeal, that there was a genuine factual dispute whether the Wellsville post office had hired Dodd as a carrier, and thus, whether she was qualified for the promotion she sought. *Id.* at 730. We further held that Dodd had presented sufficient evidence to create a genuine dispute of material fact as to whether the Postal Service's proffered reason for denying Dodd

---

[3]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

the promotion – her lack of seniority in the carrier craft – was a pretext for intentional discrimination.  We stated as follows:

> Given the conflicting messages the Postal Service sent regarding Dodd's craft assignment, a reasonable jury could infer that the Postal Service in Wellsville administered its seniority system in an irregular and arbitrary manner as a pretext for intentional discrimination.  One could reasonably infer that it is irregular and arbitrary to tell an employee she is a carrier or a clerk/carrier, pay her dues to the [National Association of Letter Carriers], complete paperwork describing her as a carrier, a clerk, and a clerk/carrier, assign her work performed by both clerks and carriers, and then deny her a promotion on the grounds that she is not a carrier.  It follows that a reasonable jury could find that the Postal Service promoted a younger man not because of the operation of a bona fide seniority system, but because of an intent to discriminate based on sex or age.

*Id.* at 730-31.  We noted, however, in remanding the case to the district court, that Dodd had not raised properly the question of whether the Postal Service discriminated against her when it assigned her to the clerk craft, assuming that it did so when she was first hired.  *See id.* at 731.

Following remand, the court bifurcated the case.  Dodd's sex discrimination claim was tried to a jury.  Thereafter, the court heard additional evidence on her age claim.

At trial, Dodd testified that she began working at the Wellsville post office in 1978.  The Wellsville office was small, employing only six to eight people.  Dodd was the first woman to work in the office.  According to Dodd, George Lipscomb, the Wellsville postmaster who hired her,  told her that she was being hired to carry mail.  Dodd's first assignment was to carry mail during times – in particular, Saturdays – when the regular carriers were not working.  She then was assigned both clerking and carrying duties, as were some of the other employees who worked with her.

–3–

Dodd insists that she was hired as a part-time "substitute carrier and clerk" or "clerk carrier." While the term "clerk carrier" apparently was used frequently in Wellsville,[4] the Postal Service does not consider "clerk-carrier" to be an official position or "craft," and the human relations specialists in St. Louis did not recognize it. Dodd's "Form 50s" (Notification of Personnel Action), which record her appointment, state that she was a "Distribution and Window Clerk."[5] A few other documents used in her personnel file, however, such as her 1983 Duty Assignment Notice/Confirmation of Assignment form, identified Dodd as a clerk carrier or substitute clerk carrier. Dodd's belief that she was a carrier is further supported by her membership and participation in the National Association of Letter Carriers, which she joined in 1980, rather than in the American Postal Workers Union, which represents postal employees other than carriers.

The Wellsville post office has two mail routes: "City Route 1," serviced by a full-time carrier, and the "auxiliary route," serviced by a part-time carrier who also assists in sorting mail. Curtis Peery was the Route 1 carrier in Wellsville at the time Dodd was hired. From 1982 through 1990, Robert Bastean was the auxiliary route carrier.

John Dodson, who replaced Lipscomb as Wellsville's postmaster, hired Paul Johnson in 1987. Johnson was hired to do the same job that Dodd had originally performed – carrying mail on Saturdays. However, he was classified as an entry level carrier, rather than as some type of clerk.

---

[4]Indeed, some male employees in the Wellsville office had similar impressions about their designation; for example, two male employees testified that they thought they were hired as "clerk carriers."

[5]Dodd's original Form 50 was missing from her personnel file. She contends that John Dodson, a later postmaster, designated her as a clerk on her Form 50s and other records to ensure that she would not get a later promotion in the carrier craft.

When Bastean announced his retirement in 1989, Dodd sought his auxiliary route position.  By that time, Robert Oliver had replaced Dodson as postmaster. Oliver questioned whether Dodd was eligible for the position because he thought she was classified as a clerk.  Oliver testified that he knew Dodd was a clerk because, in his view, the code on the time cards she submitted indicated that she was a member of the clerk craft, rather than the carrier craft.[6]  He stated that he never reviewed Dodd's personnel file to confirm that she indeed was a clerk, and he did not rely on any paperwork in the file in determining her designation.[7]

He informed Dodd that she might not be eligible and that he would have to check with John Dryden, a regional, "training" postmaster.  Oliver talked to Dryden and to Sheryl Dolde, a postal employee in the St. Louis office with significant experience in Postal Service personnel matters.  Dolde told Oliver that he could not promote Dodd.  Dolde testified at trial that she remembered Oliver's call regarding the auxiliary route promotion:

> He stated that he had a vacancy in his office; and that he had a clerk that he wanted to put into the position. But what I found out is that it was a carrier position.  He told me it was a carrier position.  I said, "Definitely Not."

Dolde further stated that Oliver could not promote Dodd to the carrier position because that would be "changing crafts . . . [a]nd you have to go by the guidelines,

---

[6]The code on Johnson's time card was different, indicating to Oliver that he was a carrier.  Oliver further testified that when either Dodd or Johnson would perform duties outside of their own craft, they would submit "utility" time cards, which were a different color.

[7]Dodd likewise was not aware of the contents of her personnel file – including her classification as a clerk on the Form 50s – until the promotion issue arose in 1989.

and we can't change crafts."[8]  Dolde also testified, on cross-examination, that a postmaster could not change an employee's craft without the employee's knowledge.[9]

After Oliver completed his inquiries, he told Dodd that she could not have Bastean's position because she was classified as a clerk.  He gave the position to Johnson instead because he was classified as a carrier.  Thereafter, Oliver offered Johnson's carrier position to Dodd.  Dodd declined because changing crafts would mean that she would begin in the carrier craft with no seniority and because she had filed a claim with the Equal Employment Opportunity Commission and did not want to compromise it.  Oliver then hired Paul Evans, making him next in line for the auxiliary route position, which Johnson left in 1994.[10]

On January 15, 1998, at the conclusion of the evidence, the district court granted judgment as a matter of law in favor of the Postal Service on Dodd's sex discrimination claim, concluding that Dodd has offered no evidence that would

[8]Dolde testified that she works with Postal Service personnel and the unions representing post office employees in implementing the various labor agreements that govern many aspects of the workplace.  The joint collective bargaining agreement in place at the time – which is national in scope – set forth the rules and other terms regarding crafts, seniority, and promotions.  For example, the agreement provides that a craft employee meeting the qualifications for another position within the craft shall be given first priority for the position.  According to Dolde, this and the other guidelines she interprets to instruct managers on personnel decisions do not vary by region or locality.

[9]Oliver also testified that he did not believe that he had the option of classifying the auxiliary route position as a clerk position.

[10]Oliver testified that Evans was to perform the same type of duties that Dodd was hired to perform twelve years earlier.  He classified Evans as a carrier, rather than a "clerk carrier," because Postal Service personnel in St. Louis had informed him that he had to choose between the clerk or carrier designations, and Evans' duties were to be primarily carrier duties.

suggest the decision maker who failed to promote her (Oliver) acted with discriminatory animus.  The court reasoned that this holding was not in conflict with our previous determination because it was based on the evidence adduced at trial and because, even if there existed a potential fact dispute with regard to pretext, no reasonable jury could infer that Dodd's gender actually was the motivating factor in Oliver's denial of her promotion.  On the contrary, Oliver simply acted according to the seniority rules that applied to Dodd, who he believed was classified as a member of the clerk craft, not the carrier craft.  The court went on to state that the younger males who were promoted were not so classified, that Dodd has not shown that she was eligible for promotion in the carrier craft, and that there is nothing else in the record that suggests Oliver acted with a discriminatory motive.  Finally, the court noted that the confusion surrounding Dodd's classification and her expectations do not establish that she was treated differently than similarly situated males, nor that her gender was a motivating factor in the denial of her promotion.

The next day, the court heard evidence on Dodd's age discrimination claim.  For similar reasons, the court concluded that Dodd had failed to meet her burden of proof as a matter of law, and granted judgment in favor of the Postal Service at the conclusion of Dodd's evidence.  This appeal followed.

## II.

We review *de novo* the district court's decision to grant judgment as a matter of law.  *Schulz v. Long*, 44. F.3d 643, 647 (8th Cir. 1995).  "Judgment as a matter of law is appropriate only when the nonmoving party fails to present enough evidence to permit a reasonable jury to decide in [her] favor."  *Gardner v. Buerger*, 82 F.3d 248, 251 (8th Cir. 1996).  We must give the nonmoving party the benefit of all reasonable inferences, and we look at the evidence in the light most favorable to her.  *Id.*  "The evidence must point unswervingly to only one reasonable conclusion."  *Id.*

(quoting *Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474, 478 (8th Cir. 1993)).

As we stated in our previous opinion, the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973), applies to Dodd's claims. *See Dodd I*, 114 F.3d at 730. We held, given the record before us at the time, that Dodd had adduced sufficient evidence to raise a fact question with regard to whether she was qualified for the position of auxiliary carrier, and hence, could establish a prima facie case of discrimination. *See id.* We also held that after the Postal Service had come forward with a legitimate, nondiscriminatory reason for choosing to promote a younger male rather than Dodd, she had adduced sufficient evidence to call into question whether this proffered reason – seniority in the carrier craft – was pretextual. *See id.* at 730-31. At that stage of the proceedings, those fact disputes apparent in the record were sufficient to preclude summary judgment. *See id*; *see also Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir.) (*en banc*) (stating that the elements of the prima facie case of discrimination combined with evidence of pretext may permit a jury to find for the plaintiff), *cert. denied*, 117 S. Ct. 2510 (1997).

Now, however, with the benefit of a fully developed trial record, we agree with the district court that, viewing all the evidence adduced at trial in the light most favorable to Dodd, no reasonable jury could infer that Oliver denied Dodd the promotion because of her sex or age. At trial, Dodd produced no evidence demonstrating that Oliver's reason for denying her the promotion – his understanding that she was a clerk and confirmation by postal officials outside of Wellsville that he could not promote her because she was not a member of the carrier craft – was pretextual. Likewise, Dodd failed to satisfy her ultimate burden of adducing sufficient evidence at trial to create an inference that discriminatory animus was a motivating factor in Oliver's decision to deny her the promotion. *Cf. Ryther*, 108 F.3d at 837-38 (indicating that, in an employment discrimination case, the plaintiff always must be able to persuade the jury that the employment decision was based upon intentional discrimination).

Dodd adduced evidence that the employment practices in Wellsville office, including the distribution of work and the classifications of employees, did not always conform with the Postal Service's stringent guidelines, to which larger offices substantially adhered. Dodd also offered evidence that Wellsville office personnel may have misclassified her as a clerk when she was hired and thereafter, while correctly classifying younger male employees. Furthermore, she offered some evidence of the discriminatory attitudes of Lipscomb and Dodson.[11]

Yet Oliver, not Lipscomb or Dodson, was the decision maker at the time Dodd sought the promotion to auxiliary carrier. He inherited the postmaster position in the Wellsville office in 1988, well after Dodd had been classified (perhaps inappropriately) on certain documents as a member of the clerk craft and Johnson had been classified as a carrier. Moreover, he considered whether to promote Dodd to the auxiliary route position, but questioned whether she was qualified because he assumed she was a clerk. He then checked with postal officials outside the Wellsville office who informed him that he could not promote her because she was not classified as a carrier. Dolde confirmed Oliver's account of his attempts to resolve the issue, testifying that she had informed Oliver that he could not promote Dodd because of her classification as a clerk. The guidelines Dolde followed in instructing Oliver were national in scope and could not be altered by local offices.

This uncontroverted evidence precludes any reasonable inference that Oliver's decision to promote Johnson instead of Dodd was motivated, in whole or in part, by discriminatory animus. Oliver simply thought, based on Dodd's time cards, that Dodd was a clerk, and he then acted on the instructions of outside postal personnel

---

[11]The district court excluded some evidence of Dodson's alleged discriminatory attitude and conduct. For the limited purpose of determining whether judgment as a matter of law was appropriate, we will consider this evidence. As we note below, however, this exclusion does not constitute a reversible abuse of discretion.

in determining that he could not promote her. Dodd's contention that Dodson, acting with discriminatory intent, altered documentation in her personnel file to ensure that she would not receive the auxiliary route promotion cannot salvage her claims. Oliver testified that he did not recall reviewing her personnel file and did not rely on any information set forth therein in determining whether she was qualified for the promotion.[12] He simply assumed that she was a clerk, without attempting to verify this conclusion, and then followed the directives of Postal Service personnel not promote her. Thus, despite the confusion over Dodd's classification in the Wellsville office, the allegedly discriminatory attitudes of previous postmasters, and Dodd's expectations, she offered no evidence tending to show that the proffered reasons for denying her the promotion were pretextual, or from which a fact finder could reasonably infer her denial was the product of intentional discrimination.

Contrary to Dodd's contentions, the district court's holding is consistent with our previous decision. Again, that decision was based on our review of a less developed record at the summary judgment stage of the litigation. We were able to glean from that record a possible fact dispute with regard to pretext, based on Dodd's evidence that the seniority system in Wellsville had been administered in an irregular and arbitrary manner. Similarly, at that time, we were unable to rule out a discriminatory motive. Following the parties' presentation of the evidence at trial, the circumstances surrounding Oliver's denial of Dodd's promotion became more clear. It is now uncontroverted that, despite any irregularity in Wellsville's classification scheme, Oliver's decision was premised exclusively on his understanding of Dodd's classification and the instructions he received from Postal

---

[12]Also, as we held in *Dodd I*, 114 F.3d at 731, the issue of whether Wellsville or other postal officials discriminated against Dodd when they assigned her to the clerk craft at the time she was hired has not been raised properly, and therefore is not before the Court.

–10–

Service officials. We therefore find that the district court correctly concluded that Dodd had not presented submissible sex and age discrimination claims.[13]

Dodd has demonstrated that the Wellsville office's administration of employees' craft classifications was unorthodox and sloppy, and that this poor administration may have led to an unfair result. Indeed, given the confusion in Wellsville and evidence tending to show that Dodd should have been classified as a carrier, Oliver and the Postal Service may have concluded mistakenly that she was a clerk. However, poor administration and even erroneous decisions cannot constitute sex or age discrimination, when, as here, a reasonable fact finder could not infer a discriminatory motive. *Cf. Gray v. University of Arkansas*, 883 F.2d 1394, 1401 (8th Cir. 1989) ("An employer's articulated reason for terminating a member of a protected class need not be a sound business reason, or even a fair one. . . . The only relevant inquiry is whether the decision was based on gender."). Thus, the Postal Service is entitled to judgment as a matter of law on Dodd's discrimination claims.

---

[13]We also reject Dodd's challenges to various evidentiary rulings below. Specifically, Dodd contends that the district court should not have excluded certain evidence relating to Dodson's discriminatory animus and certain newspaper articles, and that the court should have excluded various documents within Dodd's personnel file. We need not decide whether these rulings were erroneous because they were harmless. Even if the court had allowed the excluded evidence and had not considered the various documents to which Dodd objects, Dodd still could not have sustained her burden of establishing intentional discrimination. Thus, we will not disturb the lower court's judgment on these grounds. *See Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1059 (8th Cir. 1995) (stating that this Court will not disturb an evidentiary ruling unless there is a clear and prejudicial abuse of discretion).

## III.

For the reasons enumerated above, we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.