RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0430P (6th Cir.)
File Name: 02a0430p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

TODD ZAMBETTI,
     *Plaintiff-Appellant,*

     *v.*

CUYAHOGA COMMUNITY
COLLEGE and CLAYTON
HARRIS,
     *Defendants-Appellees.*

No. 01-3639

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-03081—Solomon Oliver, Jr., District Judge.

Argued: October 31, 2002

Decided and Filed: December 19, 2002

Before: MERRITT and GILMAN, Circuit Judges;
TARNOW, District Judge.[*]

———————————

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Caryn M. Groedel, Beachwood, Ohio, for Appellant. Barton A. Bixenstine, ULMER & BERNE, Cleveland, Ohio, for Appellees. **ON BRIEF:** Caryn M. Groedel, Beachwood, Ohio, Dennis P. Levin, Cleveland, Ohio, for Appellant. Barton A. Bixenstine, Britt J. Rossiter, ULMER & BERNE, Cleveland, Ohio, for Appellees.

———————————

**OPINION**

———————————

ARTHUR J. TARNOW, District Judge. Plaintiff Todd Zambetti appeals the district court's grant of summary judgment for Defendants Cuyahoga Community College ("CCC") and Clayton Harris. Plaintiff, who is Caucasian, alleges he was the victim of reverse discrimination because the defendants, on three separate occasions, promoted substantially less qualified African-American candidates to positions plaintiff was seeking, violating Title VII and OHIO REVISED CODE § 4112.99. The district court determined that plaintiff failed to establish a *prima facie* case and granted summary judgment in favor of both defendants on both causes of action. This appeal followed.

Because we conclude that the district court incorrectly found that plaintiff failed to establish a *prima facie* case and overlooked genuine issues of material fact on pretext and the same actor inference, we **REVERSE** and **REMAND** the case for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Defendant Harris was the Chief of Police, Department of Public Safety, for Defendant CCC. In early 1988, Defendant CCC posted a job opening for a part-time police officer.

Mr. Zambetti get the job, so Chief Harris re-posted the position to please Dr. Reis. It is, at the least, a factual dispute that precludes summary judgment.

The plaintiff also argues that the same actor inference should not apply in a failure to promote context. The rationale behind the inference is that "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them) only to fire them once they are on the job." *Proud*, 945 F.2d at 797. (internal citations omitted). However, plaintiff argues that, in the failure to promote context, it is reasonable to believe that there might be an employer who would hire a disfavored race or gender for an entry level position, but refuse to promote them above a certain level, and cites evidence of a "glass ceiling" for women and minorities. While this argument might have some merit, we will not address it here in light of *Hartsel* and our conclusion that this case must be returned to the district court due to an issue of material fact whether Harris was solely responsible for hiring plaintiff. The district court may consider it in the first instance upon remand.

## V. CONCLUSION

For the above reasons, we **REVERSE** the district court's grant of summary judgment for defendants and **REMAND** for further proceedings consistent with this opinion.

time span following the hiring, a strong inference exists that discrimination was not a determining factor for adverse action taken by the employer." *Id.* (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)).  A panel of this Court has applied the same actor inference to failure to promote cases. *Hartsel v. Keys*, 87 F.3d 795, 804 n.9.

The district court held that the same actor inference applied here because Chief Harris both hired and failed to promote plaintiff.  The district court rejected plaintiff's argument that Chief Harris did not actually hire plaintiff.[6]  In support of his claim that Dr. Reis actually directed plaintiff's hiring, plaintiff cited Chief Harris's deposition.  The district court, though, discounted Chief Harris's deposition as not substantiating plaintiff's claim.

We conclude that it is not clear from Chief Harris's deposition testimony that Harris had sole responsibility for hiring the plaintiff.  Chief Harris's deposition testimony demonstrates that plaintiff's father, a former police chief for CCC, and Dr. Frank Reis approached Chief Harris about a job for plaintiff.  Chief Harris looked into it, and said:

> I checked with the union, and they said if I didn't re-post, they would challenge it.  So I went back to Dr. Reis and said, in order to bring Todd on, I would need to re-post. So he said, okay, no problem.

The district court concluded that Chief Harris was ultimately responsible for hiring plaintiff, even though Chief Harris had to seek permission to re-post.  However, taking the facts in the light most favorable to plaintiff, the deposition testimony could demonstrate that Dr. Reis was very interested in having

---

[6]In the district court, the plaintiff also argued that the length between plaintiff's hire and the failure to promote was too long to allow the inference.  It is not necessary to reach this argument since we conclude there is a factual issue inappropriate for resolution on summary judgment regarding who hired plaintiff.

Around the same time, Dr. Frank Reis, Chief Harris's boss, and plaintiff's father, former CCC police chief Ron Zambetti, asked Harris if there were any positions available for Todd Zambetti.  Since the time for submitting applications for the open position had passed, Chief Harris went to Local 2678 of the American Federation of State, County and Municipal Employees, AFL-CIO ("union") to inquire about accepting a late application.  The union instructed Chief Harris that the position must be re-posted.  The position was re-posted, and plaintiff was hired.

After becoming a part-time officer, plaintiff sought a full-time officer position. Plaintiff, who is Caucasian, contends that three different full-time positions were given to substantially less qualified African-American applicants instead of him on the basis of race: (i) Don Bibb's position; (ii) Linda Corney's position; and (iii) Isiac Jones's position. Defendants counter that each of the three candidates received the positions because they were more senior to plaintiff under CCC's seniority system.

The collective bargaining agreement ("CBA") between the college and the union contains a seniority clause that reads:

> In awarding the position, the College will first give preference to employees with the most job classification seniority in the same job classification.  Otherwise the senior applicant shall receive the promotion if qualified unless those junior to him who have applied for the position have qualifications substantially greater than the senior applicant.

Plaintiff does not dispute that all three of the African-Americans hired instead of him had more seniority.  Instead, he states that he should have obtained the positions because he had qualifications that were "substantially greater" than all three candidates.

For each position at CCC, a Selection Advisory Committee ("SAC") interviewed candidates and then made a

recommendation to Chief Harris about who should be hired. Chief Harris was not bound by the SAC's recommendation. After review, Chief Harris made a final decision, which was forwarded to the Human Resources Administration for action.

In support of plaintiff's allegation that he was substantially more qualified than all three applicants ultimately given the positions, he states that the SAC found he possessed "substantially greater qualifications" in two of three instances – for Don Bibb's and Linda Corney's positions. He also asserts that two of the candidates, Linda Corney and Isiac Jones, did not even meet the minimum qualifications for the positions; thus, not only were they substantially less qualified, they were not qualified at all.

### 1.  *Don Bibb's position*

In mid-1998, the SAC interviewed both plaintiff and Don Bibb for a full-time officer position. Sgt. Thomas Beavers, a member of the SAC at the time, submitted an affidavit on plaintiff's behalf, stating that "[b]ased on the interview process, the SAC determined that Todd Zambetti was substantially more qualified than Don Bibb for the position, and in fact Todd scored 6 or 7 points higher on the evaluation, and we recommended Todd for the position."

Defendants assert that, while plaintiff had been on the job only a few months, Bibb had more than ten years seniority. Defendant Harris testified that he recommended Mr. Bibb for the job because he was trying to uphold the integrity of the seniority system, which the SAC had disregarded. He explained to Sgt. Beavers that the SAC needed to look at seniority and experience, as opposed to just picking a candidate.

### 2.  *Linda Corney's position*

In late 1998, plaintiff applied and interviewed for another full-time officer position. Linda Corney was awarded the position, even though the SAC again determined plaintiff was

not range-qualified for the last two years. However, taking the facts in the light most favorable to the plaintiff, the document shows that Mr. Jones was not range-qualified on a weapon, and, therefore, did not meet the minimum requirements for the position. Or at worst for plaintiff, while not conclusively showing that Mr. Jones was not qualified, it shows that a person reviewing candidates' qualifications should have noted the omission and inquired about the reasons Mr. Jones's qualifications were not indicated. Instead, the district court simply credited Chief Harris's testimony that he did not know about the lack of range qualification and found that just because Harris's subordinates knew about the lack of range qualification did not give rise to an inference that Mr. Harris knew.

The district court also noted that the SAC did not mention Mr. Jones's lack of range qualification; instead, the SAC recommended both plaintiff and Mr. Jones to the position. However, since range qualification was a requirement of the position, and Chief Harris was responsible for recommending qualified candidates, a jury could reasonably conclude that Harris did know about the lack of qualification and decided to overlook it in favor of hiring an African-American candidate. Therefore, the district court erred in overlooking the factual dispute on the Issac Jones's position, regarding whether or not Chief Harris knew or should have known that Mr. Jones was not range-qualified.

We, therefore, find that summary judgment on pretext was inappropriate and remand the case for a trial to resolve these genuine issues of material fact.

### C.  *Whether the same actor inference should apply*

The same actor inference applies when the same individual hires and fires the plaintiff. *Buhrmaster v. Overnite Trans. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). Thus, "in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short

Also, the district court misanalyzed Ms. Corney's unsatisfactory rating just prior to applying for the position. The court found that there was no evidence that Ms. Corney was ever placed on probation, but the point is actually the unsatisfactory rating itself, which makes her a less desirable candidate. While it might not be enough to overcome the seniority clause, the unsatisfactory rating's sufficiency is a jury question inappropriate for resolution in defendant's favor on summary judgment.

Finally, plaintiff points to the fact that the SAC thought security guard experience was not the equivalent of police experience. The district court applied Chief Harris's testimony that Harris had discussed the job description with Ms. Corney's supervisor at DHS and concluded that it was the same as being a police officer. It appears that the district court took the testimony in the light most favorable to defendants on this issue. In the light most favorable to plaintiff, however, the SAC correctly believed that security guard experience is not police experience, and Chief Harris disregarded the requirement so that he could hire an African-American.

All of these things together, coupled with the SAC's finding that plaintiff was substantially more qualified than Ms. Corney, create sufficient factual disputes to survive summary judgment.[5]

### 3.  *Isiac Jones's position*

Third, as to Isiac Jones, plaintiff submitted a document that clearly shows Mr. Jones's lack of range qualification for the year in which he was seeking the promotion. The district court found that Chief Harris did not know that Mr. Jones had

---

[5]The district court correctly noted, however, that plaintiff does not present any evidence to refute Chief Harris's testimony that he knew Ms. Corney had her OPOTA certification or that the certificate had to be in hand at the time of application.

"substantially" more qualified than Ms. Corney. Plaintiff asserts several reasons Ms. Corney was substantially less qualified for the position. First, she did not have a current certificate from the Ohio Peace Officers Training Academy ("OPOTA"), which was a requirement of the job. In fact, the SAC specifically noted Ms. Corney's lack of certification. Second, she did not have the required three years police experience. Rather, she misled reviewers by stating on her application that she was a police officer for the Department of Human Services ("DHS"), when she was actually only a security guard. Third, she intentionally omitted prior work experience on her employment application because she had been demoted at the omitted position. Fourth, she did not provide the required three references. Finally, she had recently received an unsatisfactory job performance rating.

In addition, plaintiff submitted the deposition testimony of Jerome Klue, a member of the SAC at the time Mr. Zambetti and Ms. Corney were interviewed. Mr. Klue testified that to his knowledge Chief Harris always followed the SAC's recommendation, except in Ms. Corney's case. He also testified that Ms. Corney did not have her OPOTA certification, she omitted prior work experience, and she did not have three years of police experience. He testified that, by contrast, plaintiff's application was complete, and, because he was "substantially more qualified" – particularly in light of the certification – he was the one recommended for the position.

Defendants assert that the SAC was mistaken about Ms. Corney's lack of qualifications, and since Ms. Corney was more than a year senior to plaintiff, Chief Harris felt contractually bound to recommend her for the position. In particular, Chief Harris testified that, contrary to the SAC's finding, Ms. Corney had her OPOTA certificate. He deliberately sought written confirmation of her certification. Second, defendants maintain that the SAC incorrectly found that Ms. Corney did not have three years of police experience. Mr. Harris testified that he counted her security guard position

at DHS as police experience because he talked to Bob Rose, Ms. Corney's supervisor at DHS, who explained the type of work involved in the position. He found it was similar because the security guards performed police duties and were armed. Third, Chief Harris found it irrelevant that Ms. Corney omitted a position from her resume because he had her application from her original application for part-time employment, which included the omitted employment. In sum, defendants assert that "Chief Harris knew that he was contractually bound to recommend Corney, the more senior candidate, unless Zambetti was 'substantially' more qualified than her. Finding no such evidence, Chief Harris recommended Corney for the vacancy, based solely on her seniority compared to Zambetti."

### 3. *Isiac Jones's position*

Plaintiff applied for a third full-time position in early 2000. Plaintiff contends that, once again, he was substantially more qualified than the candidate selected, Isiac Jones. Plaintiff points to the fact that Mr. Jones had not qualified on a firearm for over two years, from March 1998 through May 2000, despite Sgt. Klue's testimony that full-time police officers must qualify twice a year and part-time officers must qualify once a year.

Defendants respond that, once again, the candidate Chief Harris selected had more seniority than plaintiff by seventeen months. Defendants contend that Chief Harris did not know about Mr. Jones's failure to qualify on a firearm for over two years. Also, plaintiff fails to mention that the SAC recommended both Isiac Jones and Todd Zambetti for the position, without specifying that one or the other was more qualified for the position. Since Chief Harris could not discern a difference in the two candidates' qualifications, he

The point of Sgt. Beavers testimony was that the SAC found plaintiff was substantially more qualified than Mr. Bibb. Whether or not Chief Harris credited the six or seven point differential is inconsequential.

Second, as for whether Sgt. Beaver's testimony on the substantially more qualified issue should be credited, the district court stated that the file on Mr. Bibb's position was lost, so there was no evidence to substantiate Sgt. Beaver's affidavit. But this is no reason to disregard the affidavit. Also, the cases cited by the district court, *Haley* and *Mitchell*, are distinguishable. In both cases, the courts discounted co-employees' accounts that plaintiff suffered disparate treatment due to race or sex. Here, because Sgt. Beavers was a member of the SAC, plaintiff's evidence is from one who had personal knowledge of the SAC recommendation. We therefore conclude that Sgt. Beaver's affidavit creates a genuine issue of material fact on Mr. Bibb's position.

### 2. *Linda Corney's position*

Second, plaintiff has submitted several genuine issues of material fact demonstrating that application of the seniority system might have been mere pretext as to Linda Corney's position. While Chief Harris testified that inside candidates did not have to have three references, plaintiff submitted a company memorandum from Allie Durham, District Director of Staffing and Systems Development, that even inside applicants had to submit all the application materials and "[f]ailure to do so will preclude you from this opportunity." The district court found that there was no evidence that Chief Harris knew of this memorandum, but whether Chief Harris had knowledge of the particular memo is a genuine issue of material fact. Taking the evidence in the light most favorable to plaintiff, the memo establishes that the company policy required three references, even for inside candidates, and Chief Harris might have just conveniently ignored a company policy when it suited him.

### 1. **Don Bibb's position**

First, as to Don Bibb, the plaintiff presented Sgt. Thomas Beavers, a member of the SAC at the time, who testified that "[b]ased on the interview process, the SAC committee determined that Todd Zambetti was substantially more qualified than Don Bibb for the position, and in fact Todd scored 6 or 7 points higher on the evaluation, and we recommended Todd for the position." The district court held that "even assuming that the SAC found that Zambetti was substantially more qualified than Bibb, Harris's decision to promote Bibb over Zambetti does not establish pretext." Because Chief Harris testified that the point system that the SAC's decision was allegedly based on was no longer being used, the district court held that plaintiff did not present any evidence to contradict Chief Harris's assertion that he did not use the point system in making his decision. In support, the district court cited *Dodd v. Runyon*, 114 F.3d 726, 727 (8th Cir. 1997), *on appeal after remand*, 178 F.3d 1024, 1029-30 (8th Cir. 1999), where the Eighth Circuit found that a court must evaluate the decision-maker's subjective understanding in evaluating whether there was discriminatory intent. Regarding Sgt. Beaver's testimony about the SAC believing plaintiff was "substantially more qualified" than Mr. Bibb, the district court found that "[w]ithout more, mere opinions expressed by individuals not directly involved in the final decision-making process have no probative value as to a defendant's alleged discriminatory intent," citing *Haley*, 2001 WL 92135, at *7 and *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585-86 (6th Cir. 1992).

Plaintiff argues that whether the point system was still in use is not relevant. Plaintiff also asserts that Sgt. Beavers's and Sgt. Klue's testimony that the SAC found that plaintiff was substantially more qualified than Mr. Bibb is sufficient to create a genuine issue of fact. We agree.

First, Chief Harris's testimony that he disregarded the point system because it was no longer in use is not determinative.

recommended Mr. Jones in accordance with his contractual obligations.[1]

## II. PROCEDURAL HISTORY

On December 17, 1999, Plaintiff Zambetti filed a complaint with a jury demand against Defendants CCC and Chief Harris. Plaintiff filed an amended complaint on May 16, 2000. On December 15, 2000, defendants filed a motion for summary judgment. Without oral argument, the district court, on May 30, 2001, issued an order granting defendants' motion for summary judgment as to all counts and entered a judgment against the plaintiff disposing of the case. Plaintiff appealed.

## III. STANDARD OF REVIEW

This Court reviews the district court's order granting defendants' motion for summary judgment *de novo* using the same summary judgment test as the district court. *See Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ANALYSIS

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to establish a *prima facie* case of race discrimination, the plaintiff must demonstrate four things: (i) he is a member of a racial minority; (ii) he was qualified for the position he was seeking; (iii) despite his qualifications, he

---

[1] The Court notes that, while not relevant to resolution of this lawsuit, in August 2000, Mr. Zambetti applied for and received a full-time patrol position.

was rejected; and (iv) after his rejection, the position remained open and the employer sought applicants from persons of complainant's qualifications. The *McDonnell Douglas* test arose in the context of racial discrimination in hiring, but the Supreme Court recognized the need to adapt the test to different employment contexts. *Id.* at 803 n.13. In adapting the test to cases of reverse discrimination, the Sixth Circuit has held that, under the first prong, plaintiff must demonstrate "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quoting *Parker v. Baltimore and Ohio Railroad Co.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)). Under the fourth prong, because this is a failure to promote case, plaintiff must show that the "employer treated differently employees who were similarly situated but not members of the protected group." *Id.*

If plaintiff creates a *prima facie* case of discrimination, the burden shifts to defendant to proffer a legitimate, non-discriminatory reason for plaintiff's rejection. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to plaintiff to demonstrate that the offered legitimate reasons are pretextual. *Id.* at 804.

Applying this test, the district court granted summary judgment for defendants, basing its decision on three grounds. First, the court held, under the first prong of the *prima facie* case, plaintiff failed to demonstrate that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority."[2] Second, the court held that CCC's stated reason for not hiring the plaintiff, the seniority system contained within the collective bargaining agreement, was a legitimate reason, and plaintiff failed to meet his burden that defendants' legitimate

*fide*, plaintiff can show either that (1) "the seniority system was adopted or negotiated with a discriminatory motivation or purpose," or (2) "the seniority system was administered in an irregular or arbitrary way with intent to harm members of a protected class." *N.A.A.C.P.*, 900 F.2d at 909-10. The district court correctly found that plaintiff has not offered any evidence that the seniority system was adopted with a discriminatory motivation, so he must show it was administered in an irregular or arbitrary manner.

Plaintiff argues that he had qualifications that were "substantially greater" than all three candidates. He argues that the district court, in concluding otherwise, drew inferences in favor of the defendants rather than the plaintiff and overlooked genuine issues of material fact in granting summary judgment for defendants. In support, for each position he was denied, he submits several examples of genuine issues of material fact that the district court improperly resolved.

---

[2] After finding that plaintiff failed the first prong of the *prima facie* case, the district court could have stopped its analysis, but it proceeded to evaluate the rest of plaintiff's claims.

---

because there is "hardly a seniority system in existence that does not require that the more senior candidate possess some level of qualifications for the position."

We note that there is no question defendants purported to create a seniority system. The district court correctly held that defendants have a seniority system because:

> the provision mandates that those with more seniority be given priority in making promotion decisions unless a less senior employee is substantially more qualified. Thus, the primary feature of the provision is that when new positions are available at CCC, those employees with more seniority will be given preference. As the *N.A.A.C.P.* court found, this is the essence of a seniority system.

*Accord Haley*, 2001 WL 92135, at *5 (finding a seniority system was a legitimate reason where it filled vacancies with employees who have "the necessary qualifications and the most plant service"). The only question for this Court is whether defendant's seniority system was administered in an irregular or arbitrary manner.

Plaintiff asserts that the district court erred because defendants' proffered reason for not promoting him, the seniority system, was not the true motivation behind their decision; rather it was pretext to discriminate against him because of his race. He states, "[t]he alleged 'seniority system' is nothing more than a way for Chief Harris to select his cronies to positions he wants." To establish pretext, plaintiff must show that defendants' nondiscriminatory reason: (1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Seniority systems "are afforded special treatment under Title VII." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81 (1977). Title VII, section 703(h) states:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a *bona fide* seniority system or merit system . . . provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(h). To demonstrate pretext in the context of a seniority system, plaintiff must show that either "the employer's practice is not a seniority system or part of a seniority system, or that the seniority system is not *bona fide*." *N.A.A.C.P. v. Detroit Police Officers*, 900 F.2d 903, 909 (6th Cir. 1990).

Plaintiff argues that defendant's seniority system is not *bona fide*.[4] To show that the seniority system is not *bona*

---

[4]Plaintiff makes an unavailing argument that defendant's seniority system is not *bona fide* because it injects subjective factors into promotion decisions. Defendants counter that section 703(h) would be 'gutted'

reason was pretextual. Third, the court held that because the person who hired plaintiff, Defendant Harris, was the same person who did not promote plaintiff, plaintiff's case was weakened by the same actor inference.

The plaintiff challenges each of those conclusions, arguing that summary judgment was improperly granted. We will address each argument in turn below.

### A.    Whether plaintiff established the "background circumstances" necessary to create a prima facie case of reverse discrimination

As outlined above, the first prong of the *prima facie* case requires plaintiff to show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." To establish such background circumstances, the plaintiff can present "evidence of [defendants'] unlawful consideration of race as a factor in hiring in the past justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Jamison v. Storer*, Nos. 83-1170, 83-1244, 1987 WL 44901, at *3 (6th Cir. Sept. 30, 1987) (unpublished table decision) (quoting *Parker*, 652 F.2d at 1018).

The district court held that plaintiff did not present sufficient evidence to meet this burden. First, plaintiff alleged that in the last six years, Chief Harris has hired only one white police officer for ten to fifteen vacancies. However, the district court stated that the evidence was presented in a vacuum because there was no indication how many white or black officers actually applied for the positions. Second, plaintiff alleged that Chief Harris disregarded the SAC's recommendation only the three times plaintiff was not promoted. However, the district court rejected that evidence because the plaintiff did not offer any evidence regarding how many times the SAC recommended a candidate with less

seniority over a candidate with more seniority, as in the three instances at issue here.

The plaintiff does not respond to the district court's ruling on this point. He does not attempt to cite further evidence of background circumstances that the district court may have overlooked. Rather, plaintiff points to several issues that he considers genuine issues of material fact, which preclude summary judgment. However, the issues raised by plaintiff all relate to whether defendant's proffered legitimate reason for not hiring plaintiff, the seniority system, is pretextual. Unless plaintiff is able to satisfy prong one, though, the court does not even reach the pretext arguments. *Murray*, 770 F.2d 68; *Jamison*, 1987 WL 44901, at *3.

We agree with the district court that how frequently Chief Harris disregarded the SAC's recommendation is meaningless without knowing how many times the committee recommended someone with less seniority. Similarly, no inference may be drawn from the fact that Chief Harris hired only one white person for ten to fifteen vacancies in six years, because we do not know the racial composition of the applicant pools for those positions. On the other hand, the person in charge of hiring for CCC, Chief Harris, was himself African-American. This is sufficient, in our opinion, to satisfy *Murray*'s "background circumstances" requirement. *Cf. City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 495 (1989) ("[H]eightened scrutiny would still be appropriate in the circumstances of this case . . . In this case, blacks constitute approximately 50% of the population of the city of Richmond. Five of the nine seats on the city council are held by blacks."). We therefore conclude that the plaintiff created a genuine issue of material fact on "background circumstances," and the district court's decision is reversed on this point.

Additionally, we note that the "background circumstances" prong, only required of "reverse discrimination" plaintiffs, may impermissibly impose a heightened pleading standard on

majority victims of discrimination. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 n.7 (6th Cir. 1994); *Ulrich v. Exxon Co.*, 824 F. Supp. 677, 683-84 (S.D. Tex. 1993) (collecting cases). In *Pierce*, another panel of this Court stated, "[w]e have serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." 40 F.3d at 801 n.7. The panel, though, found it was unnecessary to reach the issue because the plaintiff did not satisfy another portion of the *prima facie* case. *Id.* We share the concern that, in a case such as this one, where the plaintiff has created a genuine issue of material fact on pretext, *see infra*, Section B, the potential application of a heightened pleading standard could be the difference between granting and denying summary judgment.

Therefore, with our conclusion on prong one, since the defendants seem to concede that plaintiff satisfies prongs two through four, plaintiff has established a *prima facie* case of race discrimination.

### B. Whether plaintiff met his burden of demonstrating defendants' reason for failing to promote him, the seniority system, was pretextual

After plaintiff establishes the *prima facie* case, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for failing to promote plaintiff. Defendants assert that Chief Harris did not promote plaintiff because of the seniority system. Plaintiff does not contest that a seniority system could be a legitimate reason.[3] The burden then shifts back to the plaintiff to demonstrate that the proffered reason is pretextual.

---

[3] The district court held that complying with a collective bargaining agreement is a legitimate nondiscriminatory reason for deciding to promote others than the plaintiff, citing *Haley v. General Elec. Co.*, No. 99-6349, 2001 WL 92135, at *5 (6th Cir. Jan. 23, 2001) (unpublished), and plaintiff does not dispute this holding in his brief.