**Brenda K. BERGER, Plaintiff,**

v.

**Thomas E. WHITE, Secretary of the Army, Department of the Army, Defendant.**

**Civil Action No. 3:02–CV–75–H.**

United States District Court, W.D. Kentucky,

Nov. 26, 2003.

Lyn Taylor Long, C. Mike Moulton, Moulton & Long, Elizabethtown, KY, for Plaintiff.

Regina S. Edwards, U.S. Attorney Office, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

HEYBURN, Chief Judge.

This is a reverse-racism/hostile work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Defendant, Thomas E. White, Secretary of the United States Army, Department of the Army (collectively the "Army") has moved for summary judgment. For the reasons that follow, the Court agrees that Plaintiff fails to meet her burden to withstand Defendant's motion for summary judgment because Plaintiff is unable either to prove the prima facie elements of reverse discrimination or to produce facts tending to show a hostile work environment.

### I.

In 1994, Plaintiff, Brenda K. Berger, is Caucasian. She began working in the Internal Medical Clinic at Ireland Army Hospital (the "Hospital"). Within a year, she received her first of a series of accolades at work. Several co-workers, including Mrs. Emily Tutson ("Tutson"), who is African–American, were upset by this. In June 1995, Plaintiff was temporarily promoted for 120 days. Again, co-workers, including Tutson, were outraged. In July 1995, Plaintiff was awarded the MEDDAC coin for service. Co-workers and Tutson were angered when Plaintiff received this award. Tutson stated Plaintiff only received the award because she was a friend of the administrative officer and because Plaintiff was Caucasian. In October 1995, the new commander, Colonel Burkhalor, made a surprise visit and thanked Plaintiff for her service in the temporary position. Tutson was again outraged by the visit and requested her own appointment with the Colonel. Plaintiff says that through all of these occurrences she endured hostility in the workplace, caused by Tutson and her influence over Plaintiff's co-workers.

Shortly after the visit from the Colonel, Plaintiff received the Army Achievement Medal for Civilian Service and again endured hostility from co-workers. During a clinic-wide staff meeting workers debated whether Plaintiff should have received the award. Plaintiff was not present at the staff meeting. Tutson was vocal during the meeting, explaining her concern of Plaintiff getting the award only because she was Caucasian and African–Americans getting nothing at the Hospital. In September and November 1995, Plaintiff requested lateral transfers within the Hospital in order to get away from the "hostility."

In early 1995, Sergeant Eric Flemming ("Flemming"), who is African–American, became NCO at the Clinic. In December 1995, and January 1996, Plaintiff did not receive certain LES statements. After discussing this with Flemming, Plaintiff still did not receive the LES statements. In February 1996, Plaintiff believed someone took documents from her workplace. After this incident, Plaintiff spoke with Dr. Hughes, Chief of Internal Medicine, about the hostility at the Clinic. Plaintiff had also spoken to Dr. Malik, who was Chief before Hughes, and Dr. Baunchalk, about transfer to another job due to the racially hostile work environment. Plaintiff explained to Dr. Baunchalk that she was suffering physically and emotionally. After a management meeting, Flemming was told to remedy the racial situation.

Plaintiff began counseling in April 1996. She was off work for four weeks in May 1996, because of physical and emotional deterioration. Plaintiff returned to work at the clinic. Plaintiff asked to work on the Memorial Day and Fourth of July holidays and received approval from Hughes. Flemming told Plaintiff he would get the key for her to get into the clinic. He did not deliver the key. In August

1996, Plaintiff requested a three-day leave in September and again cleared it with Hughes. However, Flemming charged Plaintiff as AWOL for these three days. Later the charge was withdrawn. Plaintiff was then transferred to the Red Clinic. The Red Clinic requested Plaintiff's personal file. Plaintiff alleges Flemming initially refused to transfer the file and only did so after several days.

Plaintiff met with an EEOC counselor in September 1996, right after the most recent events. Plaintiff's final interview with the counselor was October 15, 1996. She filed a formal complaint with the EEO on October 29, 1996, based on a racially hostile work environment. In May 1997, the agency determined there was no discrimination. Thereafter, Plaintiff appealed to the EEOC which also turned aside her claim. On February 11, 2002, Plaintiff filed this complaint. Plaintiff argues she was subjected to a hostile work environment because she was Caucasian. She informed management of these problems but feels nothing was done to eliminate them. Plaintiff is still in counseling and on medication for the severe emotional distress from working at the Clinic.

## II.

■■■■ Actions which are so severe and pervasive as to alter the conditions of one's employment and create an abusive work-ing environment constitute a hostile work environment in violation of Title VII. *See Hafford,* 183 F.3d at 512.[1] To establish this claim a plaintiff must set forth a prima facie case. This gives rise to an inference of discrimination. *See Sutherland v. Michigan Department of Treasury,* 344 F.3d 603, 614 (6th Cir.2003). To establish a prima facie case a plaintiff must show: 1) plaintiff-employee was a member of a protected class; 2) plaintiff was subjected to un-welcomed racial harassment; 3) harassment was based on race; 4) harassment had the effect of unreasonably interfering with employee's work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *Hafford,* 183 F.3d at 512.[2]

■■■■ In a reverse discrimination case, this standard is modified. *See Sutherland,* 344 F.3d at 614. The first prong has been interpreted to allow a majority plaintiff establish a prima facie case of intentionally disparate treatment when "the background circumstances support the allegation of defendant being an unusual employer who discriminates against the majority." *See Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985).[3] The remaining elements of the test are modified to reflect the requirement that the plaintiff demonstrate he was treated differently

1. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted).

2. Employer liability for co-worker harassment is based directly on the employer's conduct, and employer becomes liable when it knew or should have known of the harassment and failed to implement prompt and appropriate corrective action. *See Pierce v. Common-wealth Life Ins. Co.,* 40 F.3d 796, 804 (6th Cir.1994). Employer liability for supervisor harassment is vicarious. *Id.* at 803

3. In reverse discrimination cases of failure to promote, plaintiffs may prove the "background circumstances" element by presenting evidence of the defendant's unlawful consideration of race in employment decisions in the past. *See Sutherland v. Michigan Department of Treasury,* 344 F.3d 603, 615(6th Cir. 2003). Finding this evidence justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely. *Id.*

9

6

than other similarly situated employees. *Id.*[4]

■ To determine whether a hostile or abusive workplace environment exists, a court must view the facts objectively and subjectively, and decide if the alleged harassment is severe and pervasive. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The "totality of the circumstances" standard is used rather than any one factor being dispositive in the result. *Id.* To determine whether actions constitute severe and pervasive harassment, the Court may consider the frequency, severity, and nature of the harassment (whether it is physically threatening or a mere offensive utterance), along with if the harassment unreasonably interferences with work performance. *Id.*[5]

**A.**

■ As a preliminary issue, the Army argues Plaintiff failed to exhaust her administrative remedies because she did not raise the discrimination issue in a timely manner.[6] Army claims that to pursue a discrimination suit, an employee must contact an EEO counselor within 45 days of the alleged discriminatory act. Plaintiff

did not contact the EEO counselor until September 16, 1996. Therefore, Army asserts that any allegation prior to August 1, 1996, is barred because the 45–day time limit is treated as a statute of limitations for filing a suit.

■ The Court disagrees. A hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice for purposes of the filing requirement of Title VII. 42 U.S.C. § 2000e–5(e)(1); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). It does not matter that some of the acts which make up the hostile work environment fall outside the statutory period, provided that at least one act contributing to the claim occurs within the period. *See National R.R. Passenger Corp.*, 536 U.S. at 117. Plaintiff alleges that the discrimination continued up to and after her transfer to the Red Clinic, which occurred after August 1, 1996. Plaintiff's claim is not precluded on these statutory grounds.

**B.**

■ Even looking at the evidence in a light most favorable to Plaintiff, the co-

---

**4.** This alternative element, although possibly relevant in a hostile work environment case, is more applicable in disparate impact or failure to promote cases. *See Pierce*, 40 F.3d at 796; *see also Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 255 (6th Cir. 2002). In a failure to promote discrimination case in which reverse-discrimination is being alleged, for example, a plaintiff must show that the employer treated differently employees who were similarly situated but not members of the protected group. *See Zambetti*, 314 F.3d at 255. In order for employees to be similarly situated for the purpose of Title VII cases, a plaintiff must show "all relevant aspects of his employment situation are nearly identical to those of the employees he alleges were treated more favorably ... in all relevant aspects of their respective employ-

ment circumstances." *See Ruth v. Children's Medical Center*, 940 F.2d 662 (6th Cir.1991).

**5.** Simple teasing, offhand comments, and isolated incidences, unless extremely serious, are not enough to amount to discriminatory changes in the terms and conditions of the employment, as required by the fourth element of prima facie hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

**6.** Army also argues Plaintiff has not exhausted her administrative remedy with respect to the Age Discrimination Act and the Rehabilitation Act. However, Plaintiff is only making a claim under Title VII for hostile work environment and is not asking for any relief under those statutes.

workers' comments and actions are not the character which create a hostile work environment. The comments may have been negative, but they do not amount to "intimidation, ridicule, and insult." *See Harris*, 510 U.S. at 21, 114 S.Ct. 367. These are not the kind of comments Title VII intended to preclude. There were no racial slurs or physical threats that even raise the factual question of intimidation. *See Hafford*, 183 F.3d at 513. These comments based on race were not severe enough nor did the statements occur enough times or over a long enough period of time to be considered pervasive. *See Faragher*, 524 U.S. at 775, 118 S.Ct. 2275.

To be sure, Tutson complained about racial discrimination against African–Americans. However, these statements do not amount to harassment against Plaintiff. Discourtesy, rudeness or expressions of opinion even involving racial matters should not be confused with racial harassment. Similarly, a lack of racial sensitivity alone does not amount to actionable harassment. *Id.* at 787, 118 S.Ct. 2275. Tutson's statements only voiced her own concerns about racism working *against* her own interests, and were not the severe and pervasive racial statements against Plaintiff. They cannot form the basis of a claim by Plaintiff against her employer. Flemming's actions were normal job misunderstandings, from which a reasonable juror could not infer racial animus.

For an employer to be liable it must know of the hostile work environment and fail to respond to it. However, a prerequisite is that a hostile work environment must exist. None of the actions here, either by co-workers or management, amounted to a hostile work environment for Plaintiff. Although Flemming and other management knew of Plaintiff's concerns, as well as other employees' concerns over favoritism with possible racial overtones, the evidence does not suggest the existence of a hostile work environment.[7]

Plaintiff's claim fails for a whole host of other reasons. First, Plaintiff presents no evidence of background circumstances to support the suspicion that Army, specifically the Hospital and the Clinic, are the unusual employers who discriminate against the majority. Plaintiff says only that this is an unfair heightened standard for reverse discrimination cases. However, the Sixth Circuit has reaffirmed this element in *Sutherland*. Also, in reverse discrimination, the elements are supposed to reflect Plaintiff being treated differently than a similarly situated employee. Plaintiff gives no evidence that she was treated differently than any other Caucasian or African–American worker in the Clinic, besides the fact that she was not invited to functions by co-workers. This is not enough to amount to a Title VII violation.

The Court will enter an Order consistent with this Memorandum.

## ORDER

Defendant has moved for summary judgment. For the reasons set out in its Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is

7. The Court could stop the analysis at this point. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir.1991)(stating that when a court is convinced that a plaintiff completely failed to allege circumstances from which discrimination can be inferred, the court need not examine all elements). However, the Court chooses to evaluate the elements of Plaintiff's prima facie case.

SUSTAINED and Plaintiff's complaint is DISMISSED WITH PREJUDICE.

This is a final order.