**Jim CONNER and Ken L. Maples,
Plaintiffs–Appellants,**

v.

**HARDEE'S FOOD SYSTEMS,
INC., Defendant–Appellee.**

No. 01–5679.

United States Court of Appeals,
Sixth Circuit.

March 6, 2003.

Before: KRUPANSKY, SILER and COLE, Circuit Judges.

SILER, Circuit Judge.

Plaintiffs Jim Conner and Ken L. Maples (hereinafter "Plaintiffs") brought an action to recover damages from a failed franchise opportunity with Defendant Hardee's Food Systems, Inc. ("Hardee's"). Plaintiffs sued Hardee's for various state law claims. The district court granted summary judgment to Hardee's on all counts and dismissed Plaintiffs' case in its entirety. On appeal, Plaintiffs argue that the district court improperly granted summary judgment since the facts establish the existence of an express or implied contract, intentional or negligent misrepresentations, and violations of the Tennessee Consumer Protection Act. We **AFFIRM.**

## BACKGROUND

On June 16, 1998, Hardee's contacted Plaintiffs about a franchise opportunity with the company. Hardee's sent Plaintiffs various materials, including a franchise application and a franchise approval process checklist (the "Checklist"). At the top of the page, the Checklist stated that

potential franchisees "must complete all" the following steps in order to become a franchisee. It is undisputed that Plaintiffs were aware of the Checklist and the steps contained therein. They were also aware that there was no guarantee that they would be granted a Hardee's restaurant.

The Checklist is divided into two sections: the application process and the development process. The application process consists of five steps. There is no dispute that by September 21, 1998, Plaintiffs successfully completed the five steps of the application process and thus were financially approved, and, subject to Plaintiffs' completing Hardee's basic management training program, were also operationally approved. On September 24, 1998, Plaintiffs received a letter from Hardee's to that effect. This letter stated the following:

> Based on the results of your Operational Planning Meeting ... and the favorable financial recommendation from our Corporate Treasury Department, I am pleased to inform you of your Conditional Approval to become a franchisee of Hardee's Food Systems, Inc.

> Final Operational Approval will be granted subject to successful completion of the Hardee's Basic Management Training Program by your proposed management team. In addition, Mr. Connor will attend 4 to 5 weeks of technical training. This training will coincide with the construction of your first restaurant or prior to the acquisition of your first restaurant.

> Your next immediate step is to complete and submit the attached Preliminary Site Application. Upon receipt of this document, we will initiate our review of your proposed site.

The second half of the franchise approval process is the development process, which consists of the following relevant steps: (i) submission of a preliminary site application; (ii) execution of a commitment or development agreement and payment of an associated fee; (iii) submission of a final site package for approval by Hardee's real estate department; (iv) site approval by Hardee's; (v) execution of a franchise agreement and payment of a franchise fee; and, (vii) training of personnel. On September 30, 1998, Plaintiffs submitted a signed preliminary site application proposing to locate a franchise along the Parkway in Sevier County, Tennessee. On October 20, 1998, Bob Paszek, Hardee's Director of Real Estate, told one of the Plaintiffs that he was recommending the rejection of the preliminary site application. Paszek explained that the proposed location was too close to an existing Hardee's restaurant and that Hardee's intended to develop company-owned restaurants throughout Sevier County. Following this October 20 telephone conversation, Plaintiffs proceeded to submit five additional preliminary site applications for franchise locations in and around Sevier County. All of Plaintiffs' sites were rejected by Hardee's. It is undisputed that Plaintiffs did not complete any of the remaining steps of the development process.

For purposes of this appeal, we accept as true that during the application process Plaintiffs asked different Hardee's franchising personnel on several occasions whether Hardee's intended to develop company-owned stores in Sevier County. Contrary to Plaintiffs' insistence, however, Plaintiffs' own testimony clearly shows that Hardee's franchising personnel responded that "to their knowledge," Hardee's had no plans to develop company-owned restaurants in Sevier County.[1]

1. At the time of the events giving rise to this     suit, there was very little coordination and/or

In early 1999, Hardee's conclusively decided to develop a company-owned restaurant in Sevier County. In April, Hardee's informed Plaintiffs that it had decided to develop only company-owned restaurants in Sevier County. In December 1999 and March 2000, Hardee's opened two new restaurants in Sevier County, one on Cate Road in Sevierville (a location submitted by Plaintiffs), and the other in Pigeon Forge.

Thereafter, Plaintiffs sued Hardee's in federal district court on the basis of diversity jurisdiction. The complaint asserted claims of breach of contract, negligent and/or intentional misrepresentation, violations of the Tennessee Consumer Protection Act, promissory fraud, fraudulent concealment, and breach of fiduciary duty.[2] Following extensive discovery, the district court granted Hardee's motion for summary judgment and dismissed Plaintiffs' complaint in its entirety.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo. Gaines v. Runyon,* 107 F.3d 1171, 1174 (6th Cir. 1997). In deciding a summary judgment motion, this court must view the evidence and draw all justifiable inferences in favor of the non-moving party. *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In cases of diversity jurisdiction, a federal court is in effect another court of the forum state, in this case Tennessee, and must therefore apply the substantive law of that state. *Jandro v. Ohio Edison Co.,* 167 F.3d 309, 313 (6th Cir.1999). *See generally Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## DISCUSSION

### I. Contract Claims

"The cardinal rule of contract interpretation is that the court must attempt to ascertain and give effect to the intention of the parties." *Simonton v. Huff,* 60 S.W.3d 820, 825 (Tenn.Ct.App.2000). Tennessee law holds that a contract may be expressed or implied, written or oral, but to be enforceable, it must, among other elements, result from a mutual assent to its terms, be predicated upon sufficient consideration, and be sufficiently definite for its terms to be enforced. *Johnson v. Central Nat'l Ins. Co.,* 210 Tenn. 24, 356 S.W.2d 277, 281 (1962). "The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences regarding continuation or modifica-

communication between the different departments within Hardee's. For instance, although Rick Fortman, Hardee's Senior Vice President of Development, was interested in pursuing company-owned stores in Sevier County, nothing in the record suggests that Jeff Bryant, Hardee's Sales/Marketing Coordinator, or members of Hardee's franchising department, were aware of such an interest for quite some period of time. Therefore, members of the different departments (i.e., franchising and company development) were operating along parallel paths independent of one another—not in concert. The district court reached a similar conclusion when it

found that "[a]lthough the record does not include a corporate structure diagram, it nonetheless makes clear the bifurcated duties and operation of Defendant's development and franchising groups."

2. On appeal, Plaintiffs have not pursued their claims of promissory fraud, fraudulent concealment, and breach of fiduciary duty. The district court granted summary judgment in favor of Hardee's on each these claims. Accordingly, these claims are deemed waived. *Bush v. Dictaphone Corp.,* 161 F.3d 363, 370 (6th Cir.1999).

tion of the original contract might reasonably be drawn." *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n,* 807 S.W.2d 559, 564 (Tenn.Ct.App.1990). In order for an enforceable contract to exist, there must be a " 'meeting of the minds' between the parties with respect to the essential terms of the agreement." *Simonton,* 60 S.W.3d at 826.

### 1. Express Contract

■ There is no dispute that the parties did not enter into a written contract. Plaintiffs insist, however, that they were approved for a franchise following their completion of the application process. In support of this position, Plaintiffs point to their September 21, 1998, conversation with Dave Hoban, Hardee's Director of Franchise Operations for Sevier County, and the September 24, 1998, letter they received from Hardee's. According to Plaintiffs, "Mr. Hoban pretty much told us—well, he, in fact did tell us that, I'm going to approve you based on this meeting." Also, Plaintiffs maintain that Hardee's letter was "written confirmation of their financial and operational approval" and amounted to an "unequivocal ... commitment to grant a franchise to Conner and Maples." In other words, Plaintiffs assert that Hoban's statements and Hardee's letter manifest a contract notwithstanding the parties' intention to execute a franchise agreement at a latter date. We disagree.

Section 27 of the *Restatement (Second) of Contracts,* which has been adopted by the Tennessee courts, addresses the existence of a contract when a subsequent written memorial is contemplated. *See Engenius Entm't, Inc. v. Herenton,* 971 S.W.2d 12, 17 (Tenn.Ct.App.1998). It provides that "[m]anifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare an adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations." *Restatement (Second) of Contracts* § 27 (1979). *See also Engenius,* 971 S.W.2d at 17. Comment (b) clarifies that if either party "knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to or until the whole has been reduced to another written form, the preliminary negotiations and agreements do not constitute a contract." *Restatement,* § 27 cmt. b. *See Engenius,* 971 S.W.2d at 17. Tennessee law also makes clear that in order for the parties to make an enforceable contract binding them to prepare and execute a subsequent final agreement "it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document." *Id.*

In the instant case, Plaintiffs and Hardee's never reached an agreement as to a franchise location. As Hardee's points out, the location of a proposed franchise is one of the most essential and material terms in a franchise agreement. Any alleged "agreement" to grant a franchise at some yet-to-be-determined location is too indefinite to be enforced. Nothing stated by either Hoban or Hardee's letter changes this necessary legal conclusion.

The only justifiable inference that can be drawn from Hoban's statement and Hardee's letter regarding Plaintiffs' approval for a franchise is that such approval was limited to financial and operational approval, with operational approval being conditioned on Plaintiffs' successful completion of basic management training. Neither Hoban's statements nor Hardee's correspondence can reasonably be interpreted to create an oral contract or an agreement to contract. Nor can they be reasonably viewed as bypassing the checklist process or rendering the location of a

potential franchise as a non-material term. To the contrary, Hardee's letter, for instance, makes clear that having received financial and conditional operational approval, Plaintiffs were free to begin the development process and submit a site application, which would entail significant negotiations with Hardee's. The Checklist clearly states that "in order to become a franchisee, you must complete all the following" steps. Plaintiffs were aware of these steps and that they only completed the first step in the development process. Therefore, because Plaintiffs did not complete the checklist process, and because there was no mutual assent with regard to Plaintiffs' proposed franchise location, there could be no express contract between the parties.

### 2. Implied–in–Fact Contract

■ "[A] contract implied in fact must embody all the elements of an express contract, including an actual agreement between the parties." *Contship Containerlines, Inc. v. Howard Industries, Inc.*, 309 F.3d 910, 913 (6th Cir.2002). "The primary difference between an express contract and a contract implied in fact is the manner in which the parties manifest their assent." *River Park Hosp. v. Bluecross Blueshield of Tenn.*, 2002 WL 31302926, at *10 (Tenn.Ct.App.2002) (unpublished opinion). A contract implied-in-

fact is one where "the conduct of the parties and the surrounding circumstances show mutual assent of the terms of the contract." *Id.* In the instant case, Plaintiffs cannot make out an implied-in-fact contract. As discussed above, the parties did not have a meeting of the minds with regard to Plaintiffs' proposed franchise location. Therefore, Plaintiffs' implied-in-fact claim fails for lack of definiteness as to an essential term.

### 3. Implied–in–Law Contract

■ In their complaint, it was unclear whether Plaintiffs were seeking an implied-in-fact or implied-in-law theory of recovery. Plaintiffs simply alleged that there was an "implied contract." [3] Because of this ambiguity, Hardee's briefed both issues in its memorandum in support of its motion for summary judgment. In their response, Plaintiffs did not clarify which theory of recovery they were pursuing. In fact, Plaintiffs completely failed to respond to Hardee's arguments and otherwise did not provide any support for an implied-in-law theory of recovery. Even on appeal, Plaintiffs do not clearly state that they are seeking recovery on an implied-in-law basis.[4] Because Plaintiffs failed to brief the issue before the district court, and because the district court did not rule on the issue in its opinion, we find that Plaintiffs abandoned their implied-in-

---

**3.** Contracts implied-in-law "are created by law without the assent of the party bound, on the basis that they are dictated by reason and justice." *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn.Ct.App.1997). The Tennessee Supreme Court has recognized that contracts implied in law are also discussed in terms of unjust enrichment, quasi contract, and quantum meruit. *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154 (1966). A plaintiff seeking to recover under an implied-in-law contractual claim must prove: (1) a benefit was conferred upon the defendant; (2) the defendant appreciated the benefit; and (3) acceptance of the benefit under

the circumstances would make it inequitable for the defendant to retain the benefit without paying the value of the benefit. *Id.* at 155.

**4.** Plaintiffs do not use the words "implied-in-law" in their brief. Plaintiffs, however, discuss *Engenius* quite extensively. In *Engenius* the only implied contract theory considered by the court was an implied-in-law theory. 971 S.W.2d at 18. Plaintiffs' "Statement of the Issues" also suggests that Plaintiffs are arguing for an implied-in-law theory of recovery: "An implied contract exists when a party has conferred a benefit upon another party in reliance upon statements or actions of the

law contractual claim. *Preferred Rx, Inc. v. American Prescription Plan, Inc.,* 46 F.3d 535, 549 (6th Cir.1995) (holding that "subject to limited exceptions, this court will not consider issues not presented to the district court but raised for the first time on appeal").

## II. Misrepresentation Claims

■ Plaintiffs argue that Hardee's agents committed the tort of negligent and/or intentional misrepresentation when they repeatedly stated that Hardee's did not intend to develop company-owned stores in Sevier County. Under either theory of liability, Plaintiffs must prove that the information supplied by Hardee's agents was false. *See Shahrdar v. Global Hous., Inc.,* 983 S.W.2d 230, 237 (Tenn.Ct. App.1998) (discussing the elements of intentional misrepresentation); *Atkins v. Kirkpatrick,* 823 S.W.2d 547, 552 (Tenn.Ct. App.1991) (discussing the elements of negligent misrepresentation). Plaintiffs, however, repeatedly testified that Hardee's agents only stated that "to their knowledge," Hardee's had no intentions to develop company-owned stores in Sevier County. Under Tennessee law, in the absence of actual knowledge that a particular statement is false, statements disclosed with the qualifier "to the best of one's knowledge" cannot give rise to a misrepresentation claim. *Barnett v. Lane,* 44 S.W.3d 924, 926–27 (Tenn.Ct.App.2000). Therefore, Plaintiffs cannot establish the falsity of the information provided by Hardee's agents. Thus, their misrepresentation claims must fail.

## III. Tennessee Consumer Protection Act

The Tennessee Consumer Protection Act, Tenn.Code Ann. § 47–18–101 *et seq.*

(1995 & Supp.2000) (the TCPA), prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce" *id.* § 47–18–104(a), and in particular, "any ... act or practice which is deceptive to the consumer or to any other person." § 47–18–104(b)(27). The district court held that "after scrutinizing the evidence offered by Plaintiffs in the most favorable light" there is no TCPA violation. We agree.

■ Plaintiffs identify three violations of the TCPA. First, they allege that the TCPA was violated when Hardee's granted them conditional approval to become a franchisee and then refused to grant final approval because of its desire to build a company-owned store at the Plaintiffs' suggested location. As discussed above, Hardee's never granted Plaintiffs conditional approval to become a franchisee. Hardee's merely granted Plaintiffs conditional operational approval. Accordingly, this first alleged violation must fail.

■ Second, Plaintiffs allege that Hardee's agents violated the TCPA when they repeatedly made false statements regarding Hardee's intention to develop company-owned restaurants in Sevier County. As discussed above, Plaintiffs admitted that Hardee's limited their statements with a "to their knowledge" qualifier. Thus, because Plaintiffs are unable to prove that Hardee's agents made any false statements, Hardee's cannot be found to have engaged in unfair or deceptive practices.

■ Last, Plaintiffs contend that Hardee's violated the TCPA by appropriating Plaintiffs' real estate knowledge. The district court found this "suggestion implausi-

receiving party, and fairness dictates that the receiving party not be entitled to retain the·

undeserved benefit."

ble under the circumstances." The court also found that the information supplied by Plaintiffs was not confidential business information—but merely "booster" information. For purposes of this appeal, we accept as true that prior to the submission of their preliminary site applications, Plaintiffs *informally* gave Hardee's agents their suggested locations for a franchise. Having made this assumption in Plaintiffs' favor, the essential question is whether Hardee's appropriated that information. There can be no liability merely because Hardee's possessed certain information; Plaintiffs must point to some evidence that Hardee's unfairly used the information.

The testimony of Robert Leedy, one of the realtors working with Hardee's development team to locate potential sites for a company-owned restaurant, clearly shows that Hardee's did not appropriate Plaintiffs' real estate information. The following series of questions is highly probative on this issue:

Q: Did any of the Hardee's representatives, when they came to meet you, suggest specific sites to you that you hadn't already shown them in some form or other?

A: No.

\* \* \* \* \* \*

Q: Do you recall a situation where a Hardee's representative phoned you up and said, we'd like to think about X location, with respect to a location that you hadn't identified on one of your tours?

A: We're talking Sevier County?

Q: That's correct.

A: No. No. I don't recall that.

Plaintiffs have not directed this court to any evidence to dispute this testimony. Accordingly, the only reasonable inference that can be drawn is that although Hardee's may have possessed Plaintiffs' proposed preliminary sites, it made no use of them.[5] Therefore, Plaintiffs have failed to establish any violation of the TCPA.

**AFFIRMED.**

---

5. Even assuming *arguendo* that Hardee's appropriated Plaintiffs' information, there is nothing in the record to suggest that Plaintiffs' information was confidential or proprietary business or real estate information. As the district court correctly concluded, Plaintiffs' information was nothing more than "booster information, prepared by the local chamber of commerce for general recruitment purposes." Moreover, in the words of the district court, "any realtor—let alone anyone who has driven through the Pigeon Forge/Sevierville area—could have advised [Hardee's] to locate a fast-food restaurant somewhere on the Parkway as opposed to a less-traveled street in the area."