KAREN NELSON MOORE, Circuit Judge,
dissenting.
I agree with the majority’s conclusions that there are genuine issues of material fact as to whether Stimpson is an eligible employee and whether he provided proper notice to UPS before taking leave. How *50 ever, I disagree with its decision to affirm the district court’s grant of summary judgment to UPS on the alternative ground that Stimpson cannot show that he suffered a “serious health condition” within the meaning of the FMLA. Accordingly, I dissent.
The FMLA’s definition of “serious health condition” includes an “injury ... that involves ... continuing treatment by a health care provider.” 29 U.S.C. § 2611(11)(B). In relevant part, the regulations define “continuing treatment” as:
(i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
(A) Treatment two or more times by a health care provider, by a nurse or physician’s assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
29 C.F.R. § 825.114(a)(2)(i) (2003) (amended 2009).
Thus, Stimpson can avoid summary judgment if he presents sufficient evidence that (1) for more than three consecutive days he was unable to work, and (2) he was treated by a health care professional at least twice during that period. It is undisputed that Stimpson satisfies the latter element. He was treated by emergency room physicians at Beaumont on back-to-back days, April 29 and April 30, 2006, and evidently later by Dr. Brent Herr (“Dr.Herr”) for the same condition.[8]
For two reasons, Stimpson can satisfy the inability-to-work element, as well. First, the medical records provided by Stimpson reveal not only that he suffered “contusions and mild to moderate back pain,” Maj. Op. at 49, but also that he was diagnosed by the attending emergency physician at Beaumont on April 30 with an “acute myofascial strain” of the thoracic and lumbar (i.e., lower back) regions. Record on Appeal (“ROA”) at 101. Acute lumbar strains are most frequently caused by traumas, such as “injudicious lifting, falls, motor vehicle accidents or athletic injuries.” 5-15A Cherise Dyal & Laura Brasseur, Attorneys’ Textbook of Medicine ¶ 15A.40 (3d ed.2009). Although the pain is generally greatest immediately after the injury, “the onset of pain may be delayed for several hours, or marked pain and stiffness may not occur until the following day, upon awakening.” Id. ¶ 15A.43. Symptoms vary depending on the severity of the strain, but “[t]ypically, the patient with a low back strain moves with care, particularly when sitting down or *51 standing up.” Id. Treatment “includes patient reassurance, brief bed rest during the acute phase of low back pain, a firm mattress with a bed board, and the judicious use of analgesics or nonsteroidal anti-inflammatory drugs (NSAIDs).” Id. ¶ 15A.46. Additionally, “the patient should be instructed to avoid activities that intensify back pain.” Id. The recovery period depends upon the severity of the strain. Although “[t]he acute back strain patient generally experiences gradual improvement over a period lasting approximately two weeks,” patients with severe strains may not recover for up to three weeks. Id. ¶ 15A.47. Finally, there is a “significant likelihood of recurrence,” and “[wjhile the first episode of back pain is usually the briefest and least severe, the vast majority of such patients are at risk of developing another episode of back pain that will be more severe and longer lasting.” Id. Clearly, an acute lumbar strain can be a “serious health condition that makes the employee unable to perform the functions of [his] position.” 29 U.S.C. § 2612(a)(1)(D).
Second, Stimpson provided UPS with three doctors’ notes — one from an emergency room physician and two from Dr. Herr — indicating that he would be unable to attend work from April 80 to May 19, 2006, a period of twenty consecutive days. These notes are on their face evidence of incapacity. They also suggest that Stimp-son’s diagnosed acute myofascial strain was the type that causes serious difficulties, not some'milder variety. His injury was so substantial that it kept him out of work for nearly three weeks. This is “sufficient evidence to create a genuine issue of fact as to the serious nature of his own health condition.” Maj. Op. at 49 n. 7.
The majority suggests that the notes do not meet the specific requirements for medical certification of 29 U.S.C. § 2613(b). Maj. Op. at 48-49. However, even if Stimpson were required to provide medical certification under § 2613, UPS did not satisfy its duty to inform Stimpson that his certification was deficient and give him a reasonable opportunity to cure the asserted deficiency. The pertinent regulations state that “[a]n employer must give notice of a requirement for medical certification each time a certification is required.” 29 C.F.R. § 825.305(a) (2003) (amended 2009). The regulations further provide that “[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency.” Id. § 825.305(d); see also Novak v. MetroHealth Med. Ctr., 503 F.3d 572, 579 (6th Cir.2007). Even assuming that UPS’s May 5, 2006 letter to Stimpson requesting “necessary medical documentation to support your absence” gave Stimpson sufficient notice that UPS required medical certification, the record clearly shows that UPS neither advised Stimpson that it found his certification incomplete nor gave him an opportunity to cure the deficiency. ROA at 103. Accordingly, UPS cannot now complain that the certification was deficient.[9]
*52 In sum, given Stimpson’s diagnosis of an acute lumbar strain and the three separate doctors’ notes stating that he could not return to work until May 20, 2006, I believe that Stimpson has introduced sufficient evidence of a “period of incapacity ... of more than three consecutive calendar days” due to his injury. 29 C.F.R. § 825.114(a)(2)(i). Accordingly, Stimpson has established a genuine issue of material fact as to whether he received “continuing treatment” for his injury and therefore whether he suffered from a “serious health condition.” Id. § 825.114(a)(2)(i)(A); 29 U.S.C. § 2611(11)(B). Summary judgment is inappropriate. I respectfully dissent from the majority’s contrary view.

. The majority cites Morris v. Family Dollar Stores of Ohio, Inc., 320 Fed.Appx. 330 (6th Cir.2009) (unpublished opinion), which held that an outpatient needle-biopsy procedure with one follow-up appointment was “not a ‘regimen of continuing treatment.’ ” Id. at 337 (quoting 29 C.F.R. § 825.114(a)(2)(i)(B) (2003) (amended 2009)). However, that case is inapposite. Stimpson need not show a “regimen of continuing treatment,” 29 C.F.R. § 825.114(a)(2)(i)(B), because he is able to show “[t]reatment two or more times by a health care provider,” id. § 825.114(a)(2)(i)(A).

. The majority asserts that UPS had no obligation to notify Stimpson that his certification was inadequate "[b]ecause Stimpson did not timely present any medical evidence” of his condition. Maj. Op. 48 n. 4. An employee must provide certification within fifteen days of the employer's request unless he cannot do so practicably under the circumstances. 29 C.F.R. § 825.305(b). UPS requested certification on May 5, making Stimpson’s deadline May 20. As the majority notes, the company terminated Stimpson on May 12, closing his window to respond eight days early in contravention of the regulation. Maj. Op. at 47-48. Stimpson submitted his doctors' notes on May 22, admittedly two days late. The majority's *52 approach, however, would allow UPS to benefit from the fifteen-day requirement despite violating it — a windfall we should hesitate to permit the moving party.