NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0349n.06
Filed: May 19, 2009

No. 08-5852

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JEFFREY HAYES ,                              )
                                             )
        Appellant,                           )
                                             )       ON APPEAL FROM THE
v.                                           )       UNITED STATES DISTRICT
                                             )       COURT FOR THE WESTERN
UPS, ET AL.,                                 )       DISTRICT OF KENTUCKY
                                             )
        Appellee.                            )
                                             )

BEFORE:    COLE and CLAY, Circuit Judges; CLELAND, District Judge.[*]

**CLELAND, District Judge.** In this "hybrid § 301" employment case brought under the

Labor Management Relations Act, 29 U.S.C. § 185, Jeffrey Hayes appeals the district court's order

granting motions for summary judgment in favor of his former employer, United Parcel Service, Inc.

and his former union, the International Brotherhood of Teamsters, Warehousemen and Chauffeurs,

Local No. 236. Hayes argues that UPS discharged him from employment in violation of the

collective-bargaining agreement between UPS and the Union, and that the Union subsequently

breached the duty of fair representation it owed to its members. The Union advised him to admit to

wrongdoing and seek mercy during post-termination grievance proceedings, a strategy that did not

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

prevail. The district court found, however, that the Union had not breached its duty of fair representation in suggesting such a strategy. We AFFIRM the district court's judgment.

## I. BACKGROUND

### A. Factual background

Appellant Jeffrey Hayes was employed for over sixteen years as a driver for Appellee United Parcel Service, Inc. ("UPS"). Hayes worked at the Paducah, Kentucky, UPS Distribution Center, and served under Direct Supervisor Don Hayse. The Paducah Center was operated by Center Supervisor Steve Buckman, who, in turn, reported to Division Manager Tim Bingham. During his employment with UPS, Hayes was represented by Appellee International Brotherhood of Teamsters, Warehousemen and Chauffeurs Local Union No. 236 ("Union"), pursuant to a collective-bargaining agreement between UPS and the Union, the National Master United Parcel Service Agreement and Central Region Supplemental Agreement ("CBA"), which was effective from August 1, 2002 through July 31, 2008. During the time period relevant to this case, the President of the Union was Harold "Bud" Dillow, Jr., and Hayes's Union Steward was Darren Woodward.

As a driver for UPS, Hayes was subject to various rules and regulations for the performance of his job. Among other things, UPS tracks each driver's efficiency by calculating a "planned time" in which a driver should complete his route by considering, *e.g.*, the number of deliveries, stops, and packages that weigh over seventy pounds ("overweight packages"). Most packages are under seventy pounds, and those over seventy pounds are supposed to be so designated with a "heavy package" label. A driver is allowed extra time in his "planned time" for each overweight package that he delivers. UPS drivers track the number of overweight packages that they deliver by entering a record of each package in the driver's handheld computing device, known as a "DIAD" when the

2

package is delivered. UPS compares a driver's "planned time" with the time in which the driver completed his route to create a daily recap sheet. If a driver takes longer to complete his route than the amount of time allotted under the "planned time," the driver is considered "over-allowed," and conversely he is considered "under-allowed" if he takes less than the allotted time. UPS then uses a driver's average over-allowed or under-allowed statistic to evaluate that component of the driver's performance.

From October 2005 to March 31, 2006, Hayes drove the Calvert City, Kuttawa, Eddyville route. This route included Calvert City Industrial Park, which was made up of several chemical plants. Hayes claims that these plants received a high incidence of overweight packages; he alleges he ordinarily had at least five to six overweight packages each day on this route and sometimes as many as nine.[1] UPS contends, however, that most drivers do not handle *any* overweight packages on a daily basis.

In early March 2006, the center supervisor, Buckman, arranged for a self-explanatory protocol called a "ride-with" for Hayes, in which Hayes's direct supervisor, Don Hayse, would accompany Hayes on his route on March 6, 7, and 8, 2006. The parties disputed the reason for the ride-with, with Hayes appearing to allege that Buckman wanted to terminate Hayes's employment because of previous incidents regarding complaints by Hayes, disciplinary action taken by Buckman against Hayes, and Buckman's alleged interaction with Hayes's wife which resulted in a reprimand

---

[1]Hayes, however, alleges that UPS falsified any records that state he entered twenty-three overweight packages in one day and used this falsified information to confuse him during the meeting in which UPS terminated his employ.

of Buckman.[2] The Union maintains that Buckman directed the ride-with because Hayes's daily recap sheets had indicated high mileage and over-allowances, and Buckman wanted to determine their cause.

During the ride-with, Hayes's mileage and his over-allowances decreased, and, whereas he had been reporting at least five to six overweight packages per day, during the three-day ride-with he reported no overweight packages. Hayes subsequently alleged that this was because UPS removed the Calvert City Industrial Park stops during the ride-with, and these stops had accounted for almost all of his earlier overweight packages. UPS reported that Hayes did, in fact, deliver to stops at the Calvert City Industrial Park on two of the three days of the ride-with.

On March 31, 2006, after a review of Hayes's ride-with, Buckman and Bingham, on behalf of UPS, met with Hayes and Union Steward Woodward to discuss Hayes's "performance issues." At the meeting, according to Hayes, Bingham accused Hayes of several types of misconduct, including falsifying the number of overweight packages Hayes delivered. Hayes admits that, during this meeting, he stated, "I know I enter overweights like I've always been told if they're overweight and they [don't] have a sticker on them, you use your own judgment on them, so that's what I did."[3] Hayes contends that it was the regular practice of UPS to allow drivers to estimate whether a package was overweight because many shippers failed to put the appropriate identification stickers on such packages. UPS maintains that only packages labeled as overweight were to be reported as such by

[2]Much of Hayes's argument focuses on the motivation of Buckman toward Hayes. Hayes alleges that whereas Bingham would have reinstated Hayes's employment, Buckman wanted to find any reason to discharge Hayes. As Plaintiff's counsel put it at oral argument, "He wanted to get him, and he got him."

[3]Bingham, Buckman, and Woodward each allege Hayes also admitted to reporting packages under seventy pounds as overweight.

4

their drivers. Because Hayes admitted to reporting overweight packages that were not labeled as such, UPS discharged him for dishonesty, pursuant to the terms of the CBA.[4]

The matter proceeded to a first-step grievance hearing on April 19, 2006, conducted by UPS ("Grievance Hearing"). Woodward presented evidence he had gathered that many overweight packages shipped by UPS do not have the proper identifying stickers on them and that, in any case, Hayes received no monetary bonus for incorrectly reporting overweight packages. Woodward also alleges that Hayes made statements similar to those he made at the March 31, 2006 discharge meeting; however, Hayes denies that he spoke at all during the Grievance Hearing. Despite Woodward's presentation and argument at the Grievance Hearing, UPS upheld Hayes's termination.

The Union took the matter to the Kentucky State Grievance Committee (the "State Panel"), even though the Union had no obligation to represent Hayes at this level. The State Panel is a neutral panel consisting of both employer and union representatives, in contrast to the panel at the Grievance Hearing, which was adjudicated entirely by UPS representatives. Woodward and Hayes worked together to prepare for the State Panel hearing, but now the Union decided the strategy most likely to succeed in having the discharge overturned at this stage would be to plead what the Union termed a "mercy case." The Union recommended that Hayes would admit to a mistake, apologize for his actions, and ask for a second chance in consideration of his many years of service to UPS. Hayes, however, avers that he wanted to proceed, as the Union had at the Grievance Hearing, by presenting evidence that it was the practice of UPS to have its drivers enter unmarked packages if

_____

[4]Under the CBA, UPS "shall not discharge nor suspend any employee without just cause. No employee shall be suspended or discharged without first being given one (1) warning letter of a complaint and also be given a local level hearing except for the following offenses: (a) dishonesty."

5

the driver believed that they were overweight. Nonetheless, Hayes ultimately agreed to proceed as the Union suggested. Before the State Panel, Union President Dillow read into the record the following statement:

> This is Jeff Hayes, a 16 year employee. He's not been to this panel before. He has made some bad decisions, poor judgments. Jeff has expressed his apology and has admitted to his wrongful doing at the [Grievance Hearing].
>
> If the panel would give Jeff a second chance, Jeff would not be back here for another 16 years. We feel that the panel needs to know we do not condone his actions or use the following as an excuse.
>
> With that being said, Paducah [Center] is not a bonus center, so there is no monetary gain for the grievant, no monetary loss for the company. We are just asking the panel to find mercy upon Jeff, a . . . 16 year employee, and put him back to work. He's been off almost four weeks now.

In addition, Hayes testified on his own behalf:

> Q:      So you are saying you didn't falsify your time card?
>
> A:      Sir, most of the time I had five or six overweights per day and, yes I unjustly did put it in a few more overweights that didn't have overweight stickers on 'em.
>
> Q:      Okay, and you knew what you were doing was wrong?
>
> A:      Yes, sir. I should not have used my own judgment to do this.
>
> Q:      And the reason you did it was to stay out of the manager's office?
>
> A:      To get my over[-]allow down.
>
> . . .
>
> Q:      And is it your belief that you have to take something monetarily for there to be dishonesty?
>
> A:      I don't understand the question.
>
> Q:       Do you have to – does it have to be monetary for it to be dishonest?

6

A:     Sir, I realize that it was dishonesty. I realize putting the overweights in that were not marked overweight, I shouldn't have put them in. If (inaudible) had an overweight sticker on them or over 70, I shouldn't have put them in.

Q:     And correct me if I'm wrong here, but the only reason we are sitting here today isn't because you admitted it; it's because we found out?

A:     Right.

The State Panel upheld the decision made at the Grievance Hearing. The Union maintains that it was surprised by Hayes's testimony before the State Panel, and indeed, Hayes admits that no one from the Union told him to admit to dishonesty.

Hayes now claims primarily that the Union breached its duty of fair representation by acting arbitrarily and in bad faith in advising Hayes to plead a "mercy case" before the State Panel rather than arguing that Hayes had committed no improper act by engaging in the long-accepted UPS practice of reporting overweight packages as overweight even if they were not labeled as such.

**B.**     **Procedural background**

Following the Panel's denial of Hayes's request for reinstatement, Hayes filed a complaint in Kentucky state court on October 16, 2006, which Defendants jointly removed to the United States District Court for the Western District of Kentucky. The district court denied UPS's motion for a more definite statement of the complaint, and the parties undertook discovery. On February 15, 2008, Defendants each filed a motion for summary judgment. On June 10, 2008, the district court granted Defendants' motions for summary judgment because Defendants had shown that, even when the facts were viewed in a light most favorable to Hayes, Hayes had not shown that the Union breached its duty of fair representation through arbitrariness or bad faith. The district court found that it was unnecessary to determine whether UPS breached the CBA.

7

## III. ANALYSIS

### A. Standard of Review

We review the district court's order granting Defendants' motions for summary judgment *de novo,* using the same summary judgment test as the district court. *Zambetti v. Cuyahoga Community College,* 314 F.3d 249, 255 (6th Cir. 2002) (citing *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir. 1995)). Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

### B. Discussion

### 1. The L.M.R.A.

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, states,

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In enacting the LMRA, Congress codified a strong national policy of judicial enforcement of collective-bargaining agreements. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561-62 (1976). As part of this policy, courts will enforce the dispute resolution procedures which employers and unions generally agree to include in a collective-bargaining agreement. *Id.* at

8

562. Indeed, the Supreme Court has stated that "[c]ourts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.'" *Id.* (quoting *Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 569 (1960)). Because employees are thus required to pursue the remedies provided in a collective-bargaining agreement through the employees' union, "the controlling statutes have long been interpreted as imposing upon the bargaining agent a responsibility equal in scope to its authority, 'the responsibility and duty of fair representation.'" *Hines*, 424 U.S. at 564 (quoting *Humphrey v. Moore*, 375 U.S. 335, 342 (1964)).

> [W]here the union actually utilizes the grievance and arbitration procedures on behalf of he employee, the focus is no longer on the reasons for the union's failure to act but on whether, contrary to the arbitrator's decision, the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings.

*Hines*, 424 U.S. at 568. Thus, to balance issues of finality and private right to contract with the ability to vindicate one's contractual rights, the Supreme Court has allowed employees to bring a "hybrid § 301" claim, *id.* at 570-71, if:

> the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the employee-plaintiff's benefit were it not for the union's breach of its statutory duty of fair representation to the employee. To leave the employee remediless in such circumstance would, in our opinion, be a great injustice,

*Vaca v. Sipes*, 386 U.S. 171, 185-86 (1967). Accordingly, to establish a hybrid § 301 claim, a plaintiff must show both that (1) the union breached its duty of fair representation, and (2) the employer breached the collective-bargaining agreement. *Summers v. Keebler Co.*, 133 F. App'x 249, 251 (6th Cir. 2005) (citing *DelCostello v. Teamsters*, 462 U.S. 151, 164-65 (1983)). In addition, "the plaintiff must meet the onerous burden of proving that the grievance process was '*seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without

invidious discrimination or arbitrary conduct. Thus, if a union fails to present favorable evidence during the grievance process, this failure may constitute a breach of its duty only if that evidence probably would have brought about a different decision." *VanDerVeer v. United Parcel Serv., Inc.*, 25 F.3d 403, 405 (6th Cir. 1994) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994)).

## 2.     The Union did not breach its duty of fair representation

To prove that a union has breached its duty of fair representation, a plaintiff must show that "the union's actions or omissions during the grievance process were arbitrary, discriminatory, or in bad faith." *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (citing *Vaca,* 386 U.S. at 190). A union's actions will be found arbitrary only if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Assoc., Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations omitted) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). "To show bad faith, a plaintiff must show evidence of fraud, deceitful action, or dishonest conduct." *Summers*, 133 F. App'x at 253 (citing *Humphrey*, 375 U.S. at 348). "The courts have in general assumed that mere negligence, even in the enforcement of a collective-bargaining agreement, would not state a claim for breach of the duty of fair representation, and we enforce that view today." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73 (1990). Moreover "[a]ny substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *O'Neill*, 499 U.S. at 78.

Hayes alleges that the Union breached its duty of fair representation by acting arbitrarily and in bad faith in advising him to plead a "mercy case" rather than arguing before the State Panel that Hayes was merely following the long-standing UPS practice of reporting overweight packages as overweight even if they were not labeled as such. Specifically, Hayes maintains, if the Union had advised him otherwise, he would not have admitted to the State Panel that (1) he should not have used his own judgment in determining whether a package was overweight, and (2) he had an impure motive in reporting overweight packages.

**a.      The Union did not engage in arbitrary conduct**

A union's actions will be found arbitrary only if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line O'Neill*, 499 U.S. at 67 (internal citations omitted) (quoting *Huffman*, 345 U.S. at 338). Hayes does not allege any fault with the representation of the Union during the discharge meeting or the Grievance Hearing. Indeed, it appears that at the Grievance Hearing level, Union Steward Woodward undertook an investigation into Hayes's allegations and presented argument regarding the long-standing UPS practice of reporting overweight packages as overweight even if they were not labeled as such. Hayes's main contention is that the Union acted arbitrarily because the Union's representation of Hayes before the State Panel was irrational in advising Hayes to admit wrongdoing to the neutral State Panel rather than presenting the argument given at the Grievance Hearing. Hayes further contends that the Union's representation cause him falsely to admit that (1) he should not have used his own judgment in determining whether a package was overweight, and (2) he had an impure motive in reporting overweight packages, which resulted in the State Panel's determination to uphold Hayes's

11

termination. The Union contends that it abandoned its arguments regarding the overweight packages because they were wholly ineffective at the Grievance Hearing. In response, Hayes maintains that because the State Panel was a neutral body, and the Grievance Hearing occurred before a panel made up entirely of UPS representatives, the Union should have made the same arguments it had made at the Grievance Hearing because they could have resulted in a different outcome before the neutral State Panel.

At most, the Union's conduct consists of a tactical error before the State Panel. *See Garrison*, 334 F.3d at 538. Hayes does not allege intentional misconduct on the part of the Union, and the Union's decision regarding its strategy before the State seems calculated by the Union to be the strategy most likely to result in reinstatement of Hayes's position with UPS. Altering tactics following the Grievance Hearing could have been undertaken by the Union for a number of reasons, such as learning new information regarding UPS's strategy, past experience of the Union before the State Panel, or further discussions with Hayes regarding his actions. Hayes only suggests one possible factor as to why the Union's own strategy could be found ineffective. It is not the task of a court adjudicating a hybrid § 301 claim to second-guess and theorize regarding what actions a union should have undertaken. Nor does the Union's representation of Hayes sink to the level of representation found by courts to be arbitrary or irrational. *See, e.g., id.* at 539 (finding no breach of the duty of fair representation when the union representative failed to argue anything in response to the employer's determinative affirmative defense); *Summers*, 133 F. App'x at 253 (finding no breach of the duty of fair representation when the Union decided to abandon the employee's claim).

Moreover, a union's representative "cannot be held to the same standard as that of [lawyers]" because they do not have the same training or access to the same procedures which lawyers do.

12

*Garrison*, 334 F.3d at 539. Nor do mistakes, errors, poor judgment, inadequate, or even negligent representation satisfy the arbitrary requirement for demonstrating a breach of the duty of fair representation. *Id.* at 538; *Summers*, 133 F. App'x at 253 (citing *United Steelworkers v. Rawson*, 495 U.S. 352, 373 (1990). The district court was correct in its finding that the Union's actions were not shown to be "arbitrary" or "irrational."[5]

**b.        The Union did not exhibit bad faith**

"To show bad faith, a plaintiff must show evidence of fraud, deceitful action, or dishonest conduct." *Summers*, 133 F. App'x at 253 (citing *Humphrey*, 375 U.S. at 348). Hayes does not present a developed argument that the Union's actions constitute bad faith representation, but merely states that the Union's representation of him was in bad faith because it "contemplated his being deceitful and dishonest in his statement to the [State Panel], even though his underlying conduct involved no dishonest or deceitfulness in [Hayes's] own mind." Hayes's assertion, however, fails to apprehend that the bad faith must be on the part of the Union, and any dishonesty or deceit on the part of Hayes cannot be attributed to the Union. The Union did not act fraudulently, deceitfully, dishonestly, or in bad faith toward Hayes; nor does Hayes allege that the Union did so. Indeed, the Union endeavored to get Hayes reinstated, even representing Hayes before the State Panel, although the Union had no obligation to do so. Furthermore, Hayes testified during his deposition that no one

---

[5]In any event, Hayes cannot create a genuine issue of material fact by contradicting his own prior testimony. *See Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984) (quoting *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

in the Union ever told him to admit to dishonesty. The district court was correct in finding that Hayes could not demonstrate the Union had breached its duty of fair representation.[6]

**C.      There exists no need to address the claim of Breach of Contract**

The district court was not required to, and did not, reach the issue of whether UPS breached the CBA when it discharged Hayes. To establish a hybrid § 301 claim, a plaintiff must show both a breach of the duty of fair representation by the union and a breach of contract by the employer. *Summers*, 133 F. App'x at 251 (citing *DelCostello*, 462 U.S. at 164-65). "[T]he two claims are inextricably interdependent." *DelCostello*, 462 U.S. at 164 (internal quotations omitted).

## V.  CONCLUSION

The district court's order granting Defendants' motions for summary judgment is hereby **AFFIRMED**.

---

[6]To prove a hybrid § 301 claim, a plaintiff must also prove that the union's breach of the duty of fair representation resulted in a "seriously flawed" grievance process. *VanDerVeer*, 25 F.3d at 405 (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 585 (6th Cir. 1994)). The district court did not reach this issue because it found that there was no genuine issue of material fact as to whether the Union breached its duty of fair representation.